IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **MELANIE TOLBERT,** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
|     v. ) | Case No. 4:18-CV-00680-KOB |
| ) | |
| **HIGH NOON PRODUCTIONS, LLC** ) | |
| **d/b/a; HIGH NOON ENTERTAINMENT;** ) | |
| **DISCOVERY, INC. a/k/a DISCOVERY** ) | |
| **COMMUNICATIONS, LLC f/k/a** ) | |
| **SCRIPPS NETWORK INTERACTIVE,** ) | |
| **INC., a/k/a SCRIPPS NETWORKS, LLC,** ) | |
| ) | |
|     **Defendants.** ) | |

## **MEMORANDUM OPINION**

This matter comes before the court on Defendant High Noon Productions, LLC's "Motion to Dismiss Plaintiff's Second Amended Complaint" and Plaintiff Melanie Tolbert's motions to strike. Ms. Tolbert's complaint alleges violations of the Copyright Act (17 U.S.C. §§ 101 *et seq.*) and Alabama tort law against High Noon and Discovery, Inc. High Noon now moves to dismiss the action under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. (Doc. 37). Ms. Tolbert moves to strike declarations that High Noon attached to its reply in support of its motion to dismiss. (Doc. 44, Doc. 45).

For the following reasons, the court will GRANT Defendant High Noon's motion to dismiss for lack of personal jurisdiction and DISMISS High Noon from the case. The court will DENY Plaintiff's motions to strike.

1

## I. Standard of Review

Defendant High Noon moves to dismiss Ms. Tolbert's complaint against it for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). When a defendant moves to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, non-resident defendant." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988) (internal citations omitted). In evaluating a defendant's motion to dismiss for lack of personal jurisdiction, the court accepts the plaintiff's allegations as true. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). Where the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (quoting *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)). If "the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Meier*, 288 F.3d at 1269.

## II. Factual Background

In her original complaint, Alabama resident Melanie Tolbert alleged that, in 2014, she conceived of a then-original idea for a mother-daughter home renovation television show and reached out to several television industry contacts about the possibility of creating such a show. Ms. Tolbert then filmed a teaser trailer with her mother to help pitch the idea. Ms. Tolbert disseminated the teaser to several unnamed individuals and alleges that some or all of those parties somehow transmitted her trailer to either High Noon or Discovery, though she did not transmit the information to High Noon or Discovery directly.

Although Ms. Tolbert's efforts did not ultimately lead to a television show, she noticed in 2017 that Discovery-owned HGTV had its own nationally broadcast mother-daughter home renovation show called *Good Bones*, produced by High Noon. Ms. Tolbert subsequently acquired a copyright on her initial teaser trailer and brought the instant action against Discovery and High Noon for copyright infringement.

Defendant High Noon is a limited liability company organized in Colorado, with offices in Colorado and California. High Noon has produced at least nine television episodes within the state of Alabama, but none are connected to the instant action. Despite the fact that High Noon is located in Colorado and California, Ms. Tolbert alleges that High Noon has purposefully availed itself of the privileges of conducting business in Alabama and has purposefully directed efforts "towards residents of Alabama." Ms. Tolbert alleges that *Good Bones* was broadcast to Alabama through HGTV, the defendants knew that the show would be broadcast to Alabama and reach Alabama citizens, and she suffered injury in Alabama.

High Noon and Discovery filed a motion to dismiss Ms. Tolbert's original complaint, arguing, among other things, that the court lacked personal jurisdiction over High Noon. (Doc. 9). Relevant to High Noon's instant motion to dismiss, the court granted High Noon's first motion to dismiss for lack of personal jurisdiction and dismissed Ms. Tolbert's claims against High Noon without prejudice. (Doc. 21). The court found that Ms. Tolbert had failed to sufficiently allege personal jurisdiction under a theory of general personal jurisdiction because High Noon had not engaged in enough activities in Alabama to be "at home" here. The court also found that Ms. Tolbert's original complaint had not sufficiently alleged specific personal jurisdiction over High Noon because Ms. Tolbert had not alleged that High Noon intentionally directed any tortious behavior toward Alabama.

Ms. Tolbert subsequently amended her complaint to add allegations relevant to whether the court has personal jurisdiction over High Noon. Ms. Tolbert alleges that the defendants purposefully infringed on her copyrighted television show idea and teaser trailer, and further alleges that the defendants knew when they infringed on her copyright that she was an Alabama resident and that her potential show was filmed and set in Alabama. (Doc. 1 at ¶ 55; Doc. 29-1 at ¶¶ 6.1–6.3, 20.1–30.1). Ms. Tolbert did not add any other allegations of contacts between High Noon and Alabama related to her copyright infringement case.

Based on the amended allegations, the court reinstated High Noon as a defendant in the case. (Doc. 36 at 3). High Noon then filed the instant motion to dismiss Ms. Tolbert's Second Amended Complaint, asserting that Ms. Tolbert still had not sufficiently alleged personal jurisdiction. (Doc. 37).

In the filings relating to High Noon's motion to dismiss, the parties spend time discussing whether High Noon actually received the emails regarding Ms. Tolbert's idea for a television show, whether High Noon learned of Ms. Tolbert's idea after *Good Bones* was already in production, and whether High Noon actually knew of Ms. Tolbert's connections to Alabama. (Doc. 37, Doc. 42, Doc. 43). Attached to its reply in support of its motion to dismiss, High Noon has included declarations from two employees indicating that High Noon did not receive any emails from Ms. Tolbert, and that, even if it had, the emails would have postdated the development of *Good Bones.* (Doc. 43-1, Doc. 43-2). Ms. Tolbert has moved to strike the declarations as inappropriate at this stage because they relate to issues of fact. (Doc. 44, Doc. 45).

**III. Discussion**

In its motion to dismiss Ms. Tolbert's second amended complaint, High Noon argues that Ms. Tolbert failed to show that High Noon purposefully availed itself of the benefits of conducting business in Alabama. (Doc. 37). High Noon asserts that Ms. Tolbert failed to identify any relevant contacts between High Noon and the state of Alabama and, instead, merely alleged her own contacts with Alabama.

High Noon relies heavily on the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014), in asserting that Ms. Tolbert failed to sufficiently allege High Noon's contacts with Alabama. (Doc. 37). High Noon also argues that the nationwide broadcast of *Good Bones* does not establish minimum contacts with Alabama because High Noon did not distribute the show into Alabama—Discovery did. High Noon additionally asserts that it had no knowledge of Ms. Tolbert and her show, especially before the development of *Good Bones*.

In response, Ms. Tolbert argues that she alleged sufficient minimum contacts between High Noon and Alabama because High Noon knew that she was located in Alabama, her show was filmed in Alabama, harm would occur in Alabama, and *Good Bones* would be broadcast into Alabama. (Doc. 42). Ms. Tolbert asserts that the court should exercise jurisdiction pursuant to the "effects test" for personal jurisdiction as set forth in *Calder v. Jones*, 465 U.S. 783 (1984). Ms. Tolbert also argues that High Noon was aware of her show idea and teaser trailer before it developed *Good Bones*. Finally, Ms. Tolbert asserts that the broadcast of *Good Bones* provides a foundation for personal jurisdiction because High Noon knew that Discovery would broadcast the show into Alabama.

High Noon filed a reply, arguing that it never received Ms. Tolbert's emails and that it developed *Good Bones* with no knowledge of Ms. Tolbert's idea. (Doc. 43 at 3–7). High Noon

also asserts again that Ms. Tolbert failed to sufficiently allege purposeful availment to show personal jurisdiction. (Doc. 43 at 7–11).

A court may exercise personal jurisdiction over a non-resident defendant only when a plaintiff shows that the defendant had sufficient contacts with the forum state to satisfy both the requirements of the state's long-arm statute and the due process requirements of the United States Constitution. *Williams Electric Co. v. Honeywell, Inc.*, 854 F.2d 389, 391 (11th Cir. 1988). The Alabama Supreme Court has interpreted Alabama's long-arm statute as extending as far as the limits permitted by constitutional due process. *Elliott v. Van Kleef*, 830 So. 2d 726, 729 (Ala. 2002).

To satisfy the constitutional requirements of due process, a plaintiff must show that (1) the defendant has sufficient "minimum contacts" with the forum state and (2) the exercise of jurisdiction would comport with "traditional notions of fair play and substantial justice." *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1545 (11th Cir. 1993) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "This two-part test embodies the controlling due process principle that a defendant must have 'fair warning' that a particular activity may subject it to the jurisdiction of a foreign sovereign." *Id.*

A court may exercise two types of personal jurisdiction: general and specific. In this case, the court has already determined that Ms. Tolbert's allegations failed to establish general personal jurisdiction. (Doc. 21 at 6–7). Ms. Tolbert's amended complaint does not add any allegations supporting a position that High Noon is "at home" in Alabama. *See Daimler AG v. Bauman*, 571 U.S. 117, 122 (stating that general personal jurisdiction is appropriate when the defendant may be regarded as "essentially at home" in the forum state). So, only specific

personal jurisdiction remains as a potentially viable means for Ms. Tolbert to establish personal jurisdiction over High Noon.

Specific jurisdiction, as distinguished from general jurisdiction, arises when "a party's contacts with the forum . . . are related to the cause of action." *Williams Electric*, 854 F.2d at 392 (citing *International Shoe*, 326 U.S. at 316). In determining whether to exert specific personal jurisdiction, courts apply a three-part due process test that examines (1) whether the plaintiff's claims "arise out of or relate to" the defendant's forum contacts, (2) whether the defendant "purposefully availed himself" of the privileges of conducting business in the forum and, thus, invoked the forum's law, and (3) whether the exercise of personal jurisdiction "comports with traditional notions of fair play and substantial justice." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). In short, specific jurisdiction focuses on the relationships between the defendant, the forum, and the litigation at issue. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984). The defendant's conduct and connection with the forum must be such "that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

In this case, High Noon's alleged contacts with Alabama loosely arise out of or relate to Ms. Tolbert's claims, and, thus, satisfy the first prong of the test for specific personal jurisdiction. *See Louis Vuitton*, 736 F.3d at 1355. Ms. Tolbert alleged that High Noon's only contacts with Alabama consisted of the copyright infringement of her property that High Noon knew was created in Alabama by an Alabama resident and the knowledge that the infringing television show would be broadcast into Alabama. (Doc. 1 at ¶¶ 6, 55; Doc. 29-1 at ¶¶ 6.1–6.3, 20.1–30.1). Both the alleged infringement and the broadcast of the infringing material are related to Ms. Tolbert's cause of action and, thus, can potentially support specific personal jurisdiction.

7

But, the purposeful availment prong of the test for jurisdiction presents a stumbling block to the exercise of jurisdiction in this case. In cases involving intentional torts, the court can assess purposeful availment through the application of two separate tests, the "effects test," as set forth in *Calder v. Jones*, and the traditional minimum contacts analysis. *Louis Vuitton*, 736 F.3d at 1356–57. Ms. Tolbert has not sufficiently alleged purposeful availment to support jurisdiction under either test.

The decision in *Calder v. Jones* established that an intentional tort aimed at a forum state can sufficiently establish "minimum contacts" for specific personal jurisdiction based on its effects on the forum state. *Calder*, 465 U.S. at 789. There, the Supreme Court concluded that specific personal jurisdiction existed where a Florida-based publication wrote a libelous story about a California resident because the story "concerned the California activities of a California resident […,] impugned the professionalism of an entertainer whose television career was centered in California […,] was drawn from California sources […,] and the brunt of the harm […] was suffered in California." *Id.* at 788–89. The Court stated that jurisdiction in California over the Florida defendant was proper because of the "effects" in California, as California was the "focal point of both the story and the harm suffered." *Id.* at 789.

The Supreme Court more recently has built on its decision in *Calder*, stating that the minimum contacts analysis looks at "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there," such that "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285. The Court emphasized that jurisdiction was appropriate in *Calder* because the effects of the defendants' actions were connected to California rather than just to the California-resident plaintiff, in large part because of the nature of libel as a "reputation-based" tort that requires publication to third parties and

8

occurs where the offending material is circulated. *Id.* at 287–88. The Court also clarified that a *plaintiff's* contacts with both a defendant and a forum—even if the defendant has knowledge of the plaintiff's connection to the forum—do not "drive the jurisdictional analysis," and stated that a mere injury to a forum resident does not suffice to establish minimum contacts with a forum state. *Id.* at 290. In a footnote in *Walden*, the Court declined to address "whether and how a defendant's virtual 'presence' and conduct translate into 'contacts' with a particular State." *Id.* at 290 n. 9.

Ms. Tolbert's allegations regarding jurisdiction do not satisfy *Calder*'s effects test. As an initial matter, in this case the court need not delve into the factual issues of whether High Noon actually received emails regarding Ms. Tolbert's show or when High Noon began working on *Good Bones*. Even taking all of Ms. Tolbert's allegations as true, Ms. Tolbert has not alleged sufficient minimum contacts with Alabama to support the exercise of specific personal jurisdiction over High Noon.[1] *See Stubbs*, 447 F.3d at 1360; *Vermeulen*, 985 F.2d at 1545.

Although Ms. Tolbert asserts that the effects of High Noon's alleged infringement satisfy the "effects test" articulated in *Calder* because she was harmed in the forum state by the defendant's intentional tort, her argument cannot withstand the application of *Walden*. Exerting jurisdiction in this case would fly in the face of the Supreme Court's holding that personal jurisdiction over a defendant must be based on the defendant's contact with the forum itself, not with the plaintiff, such that the plaintiff cannot be the only link to the forum. *See Walden*, 571 U.S. at 285, 290. Unlike the libel at issue in *Calder*, High Noon's actions in this case did not cause harm to any forum resident other than the Plaintiff. *Id.* at 288. So, the effects of High

---

[1] The court notes that it accepts all of Ms. Tolbert's factual allegations as true, but legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Noon's alleged tortious behavior in this case lack a link to the forum beyond Ms. Tolbert herself, and the court cannot exercise personal jurisdiction over High Noon. *Id.* at 285.

Ms. Tolbert argues that, even considering *Walden*, her case satisfies the effects test based on the Eleventh Circuit's decision in *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008); in that trademark case from 2008, the Eleventh Circuit found that the use of the forum-resident plaintiff's name and trademark on a website that was accessible in the forum state supported specific personal jurisdiction over a nonresident defendant. *Licciardello*, 544 F.3d at 1287–88. In that case, the Eleventh Circuit determined that the effects test was met because the defendant had misappropriated the trademark to make money from the plaintiff's "implied endorsement." *Id.* The Eleventh Circuit stated that the trademark violation and use of a website in the forum satisfied "the *Calder* effects test for personal jurisdiction—the commission of an intentional tort, expressly aimed at a specific individual in the forum whose effects were suffered in the forum." *Id.* at 1288.

Ms. Tolbert's reliance is misplaced; *Licciardello* does not dictate that the court should exercise personal jurisdiction over High Noon in this case. *Licciardello*'s articulation of the effects test states that the effects of the intentional tort must be "suffered in the forum," but subsequently the Supreme Court in *Walden* established that those effects in the forum must go beyond mere injury to the plaintiff. *See id.*; *Walden*, 571 U.S. at 290. The tortious conduct in *Licciardello* exceeded mere injury to the plaintiff because the conduct included making use of the plaintiff's implied endorsement within the forum state, which creates the effect of misleading forum residents. *Licciardello*, 544 F.3d at 1288. Comparable effects to others are not present in the instant case.

Ms. Tolbert did not allege that the infringement of her copyright, or even the broadcast of the infringing material, had any negative effect in Alabama beyond the effects on her personally. So, the court distinguishes the instant case from *Calder* and *Licciardello* because the alleged copyright infringement and broadcast did not disseminate incorrect information, expressly impugn Ms. Tolbert's reputation like the libel in *Calder*, or create reliance on a false endorsement like the trademark violation in *Licciardello*. *See Walden*, 571 U.S. at 288; *Calder*, 465 U.S. at 788–89; *Licciardello*, 544 F.3d at 1287–88. None of the effects in this case were "tethered to" Alabama in a meaningful way beyond their connection to Ms. Tolbert and her alleged injury. *See Walden*, 571 U.S. at 290. Accordingly, Ms. Tolbert cannot show that personal jurisdiction is appropriate under the "effects test" first articulated in *Calder*.

Ms. Tolbert also cannot show purposeful availment under the traditional minimum contacts analysis. In *Keeton*, a case similar to *Calder* and decided on the same day, the Supreme Court applied the traditional minimum contacts test in an intentional tort case and concluded that the regular circulation of a national magazine into the forum state supported jurisdiction in a libel action based on the contents of the magazine because the circulation of the magazine was purposefully directed toward the forum and affected people in the forum. *Keeton*, 465 U.S. 773–74. The Court's decision in *Keeton* hinged on the fact that the magazine in that case had "continuously and deliberately exploited" the forum market. *Id.* at 781. Further, as in *Calder*, the Court emphasized the harm to forum residents, not just to the plaintiff, in a libel action. *Id.* at 776–77.

In this case, High Noon's only connections to Alabama are the alleged copyright infringement that arose from emails *sent by* Ms. Tolbert and the knowledge that Discovery

would distribute the infringing show to Alabama. The relevant question, then, is whether that activity rises to the level of "purposeful availment." *See Louis Vuitton*, 736 F.3d at 1355.

Ms. Tolbert argues that it does, citing to multiple cases predating *Walden.* Ms. Tolbert relies heavily on a Third Circuit case from 1978 that dealt with allegations of copyright infringement and unfair competition based on an interstate broadcast. *Edy Clover Prods., Inc. v. Nat'l Broad. Co.*, 572 F.2d 119, 120 (3d Cir. 1978). In that case, the Third Circuit concluded that jurisdiction was proper over the producer of a television program broadcast into the forum state because the producer knew that the production would be broadcast interstate and the state had "an interest in protecting its residents from interstate transmissions which infringe their copyrights." *Id.*

Ms. Tolbert also cites a Northern District of Georgia copyright case from 1985. *Payne v. Kristofferson*, 631 F. Supp. 39 (N.D. Ga. 1985). In that case, the Northern District of Georgia, relying on *Edy Clover*, found jurisdiction where non-resident song producers "knew and intended that their song would be distributed and performed nationwide," including in the forum state. *Id.* at 42. That court also stated that the fact that the producers did not actually distribute the song was irrelevant because the producers knew that the distributors would distribute the song nationwide. *Id.* at 43.

Neither *Edy Clover* nor *Payne* binds this court and both cases lack the persuasive weight that Ms. Tolbert hopes they carry. As an initial matter, *Edy Clover* is distinguishable from this case because it also involved an allegation of unfair competition, which arguably has more forum-based effects than copyright infringement alone. *See Edy Clover*, 572 F.2d at 120. Further, neither *Edy Clover* nor *Payne* has been cited by any court after the Supreme Court issued its decision in *Walden*.

Both *Edy Clover* and *Payne* conflict with *Walden* because they appear to suggest a much more expansive understanding of what actions confer jurisdiction. *See Walden*, 571 U.S. at 289. A similar case from the Seventh Circuit predating *Walden* provides useful non-precedential insight into *Edy Clover* and *Payne*'s viability in the new legal landscape. In 1994, the Seventh Circuit concluded that trademark infringement—which injured Indiana plaintiffs—and the nationwide broadcast of the infringing activity—which entered into Indiana—formed a sufficient basis for specific personal jurisdiction. *Indianapolis Colts, Inc. v. Metro. Baltimore Football Club Ltd. P'ship.*, 34 F.3d 410, 412 (7th Cir. 1994). But, after the Supreme Court decided *Walden*, the Seventh Circuit indicated that the *Indianapolis Colts* case was "no longer authoritative" in *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014), *as corrected* (May 12, 2014). In that case, the Seventh Circuit applied the narrower view of personal jurisdiction set forth in *Walden* and found that trademark infringement and the mere use of an interactive website did not establish personal jurisdiction in the forum state because, without a "limiting principal," a plaintiff could sue anywhere. *See Advanced Tactical Ordnance Sys.,* 751 F.3d at 803.

The Eleventh Circuit apparently has not yet addressed the jurisdictional repercussions of broadcasting an infringing television show into a forum state, especially after *Walden*. However, a few post-*Walden* cases from district courts within this Circuit provide some illumination.

In 2018, a colleague on this court noted that an internet advertisement that did not target a specific state but could be viewed within the forum state because of nationwide distribution did not establish personal jurisdiction. *Hand v. Wholesale Auto Shop, LLC*, No. 7:15-CV-01838-LSC, 2018 WL 305818, at *3 (N.D. Ala. Jan. 5, 2018). In that case, the court also noted that a defendant's knowledge of a forum plaintiff's residency did not establish jurisdiction. *Id.* at 3–4.

13

On the other end of the spectrum, this court concluded that a non-forum defendant's contacts with the forum state were sufficiently purposeful to warrant jurisdiction where the defendant made deliberate and intentional misrepresentations on its website, *directly communicated with the plaintiff*, and the "actual content of the communications with the forum" gave rise to the intentional tort. *Summit Auto Sales, Inc. v. Draco, Inc.*, No. 2:15-CV-00736-KOB, 2016 WL 706011, at *11–12 (N.D. Ala. Feb. 23, 2016) (Bowdre, J.). In that case, this court noted that the situation was different from a case involving the use of a "relatively passive" website. *Id.* at 10.

In this case, Ms. Tolbert cannot show that the alleged infringement by High Noon and subsequent broadcast of the infringing material create sufficient minimum contacts to support specific personal jurisdiction. Purposeful availment requires that contacts be "purposefully directed" at the residents of the forum. *See Keeton*, 465 U.S. at 774. High Noon's sale of *Good Bones* to Discovery for nationwide distribution lacks any purposeful direction towards Alabama specifically. The nationwide nature of the broadcast and the involvement of an intermediary distributor create a double layer of attenuation between High Noon and Alabama. Further, the broadcast of *Good Bones* shares more similarities with a defendant's use of a passive website or a national advertisement than with direct communications with the forum. *Cf. Summit Auto Sales*, No. 2:15-CV-00736-KOB, 2016 WL 706011, at 10; *Hand*, No. 7:15-CV-01838-LSC, 2018 WL 305818, at *3–4. If anything, the broadcast of a television show is even more passive than a website, as, unlike a website through which people can directly communicate with each other, a television show has no interactive element that creates an exchange between a forum resident and the broadcaster or producer.

Moreover, exercise of jurisdiction based solely on an intentional tort directed at a forum resident and a national broadcast that enters the forum state would subvert the reasoning of

14

*Walden*; the Supreme Court stated that minimum contacts jurisdiction is not based on the relationship between the *plaintiff* and the forum state, but on the relationship between the *defendant* and the forum state. *Walden*, 571 U.S. at 284. The Court continued that a plaintiff's contacts with the forum state cannot "drive the jurisdictional analysis." *Id.* at 289. Because *Good Bones* is broadcast nationwide, the only thing distinguishing Alabama in this case from every other state in the country is that Alabama is where the plaintiff happens to be located. All of High Noon's contacts with Alabama either lack purposeful direction or hinge entirely on the Plaintiff's contacts with Alabama, such that the Plaintiff's location drives the entire jurisdictional analysis in this case in contravention of *Walden. Walden*, 571 U.S. at 285.

As a final consideration, "due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Id.* at 284. The Court repeated that axiom in its footnote declining to analyze the jurisdictional impact of an intentional tort committed via electronic means. *Id.* at 290 n. 9.

In the balance, the constitutional consideration of protecting High Noon from a jurisdictional overreach outweighs any interest in Ms. Tolbert's convenience. In this case, the only alleged bases for jurisdiction were High Noon's alleged copyright infringement and the nationwide broadcast of the allegedly infringing material. No one disputes that High Noon never communicated with Ms. Tolbert directly or that codefendant Discovery actually broadcast *Good Bones*. Thus, High Noon had no direct interaction with Alabama at all; its contacts were attenuated by the fact that other parties allegedly emailed High Noon about Ms. Tolbert's idea, and Discovery broadcast *Good Bones* into Alabama.

For the reasons discussed above, High Noon's affiliations with Alabama, as opposed to Ms. Tolbert, are too "random, fortuitous, or attenuated" to support jurisdiction. *Id.* at 286. The

mere sale of a television show to a distributor who could broadcast it nationwide, even in combination with an intentional tort, simply does not rise to the level that a defendant should reasonably anticipate being haled into court in any state in the nation. *See World-Wide Volkswagen Corp.*, 444 U.S. at 297. Thus, specific personal jurisdiction over High Noon does not exist in this case.

**IV. Conclusion**

Accepting all of Ms. Tolbert's factual allegations as true, this court concludes that Ms. Tolbert has failed to establish a prima facie case that this court's exercise of personal jurisdiction over High Noon would comport with traditional notions of fair play and substantial justice. So, the court concludes it does not have personal jurisdiction over Defendant High Noon.

Accordingly, the court WILL GRANT Defendant High Noon's motion to dismiss and WILL DISMISS WITH PREJUDICE High Noon from the case. Because the court accepted all of Ms. Tolbert's allegations as true despite High Noon's declarations and determined that it does not have personal jurisdiction over Defendant High Noon, the court WILL DENY Ms. Tolbert's motions to strike as moot.

**DONE** and **ORDERED** this 21st day of October, 2019.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE